# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

STEVEN W. BALLANDBY,                )
                                    )
      **Plaintiff,**              )
                                    )
v.                                  )     **Case No. 10-CV-0339-CVE-FHM**
                                    )
BELGER CARTAGE SERVICE, INC.,       )
                                    )
      **Defendant.**              )

## OPINION AND ORDER

Now before the Court is Defendant's Motion for Summary Judgment and Brief in Support

(Dkt. # 42).  Plaintiff filed this case alleging claims under the Age Discrimination in Employment

Act (ADEA), 29 U.S.C. § 621 et seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e

et seq. (Title VII), and state law for worker's compensation retaliation, wrongful termination in

violation of an Oklahoma public policy (Burk tort),[1] and intentional infliction of emotional distress.[2]

Dkt. # 2.  Defendant seeks summary judgment on all of plaintiff's claims.  Plaintiff responds that

genuine issues of material fact preclude summary judgment on his ADEA claim and his state law

wrongful termination and workers' compensation retaliation claims, but he does not respond as to

---

[1]     The Oklahoma Supreme Court recognized a claim for wrongful discharge in violation of an established Oklahoma public policy in Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989), and this type of claim has become known as a Burk tort.  Plaintiff alleges that defendants violated the public policy of Oklahoma by engaging in age discrimination, and the Oklahoma Supreme Court has held that age discrimination is prohibited by the public policy of Oklahoma.  See Saint v. Date Exchange, 145 P.3d 1037 (Okla. 2006).

[2]     Plaintiff's complaint also alleges a claim of gender discrimination under Title VII, but plaintiff voluntarily dismissed that claim with prejudice.  Dkt. # 39.

his Title VII retaliation and intentional infliction of emotional distress claims. See Dkt. # 53. Defendant filed a reply. Dkt. # 56.

**I.**

Belger Cartage Service, Inc. (Belger) hauls heavy equipment and specializes in loading and transporting hazardous, large, and over-weight commodities and machinery. Dkt. # 42-1, at 2. Belger maintains several divisions throughout the midwestern United States, including a Tulsa division, and Jerry Ewton is the manager of the Tulsa division. Belger hires truck drivers and heavy equipment operators for its Tulsa division, and Belger has a collective bargaining agreement (CBA) with its truck drivers at the Tulsa division through the General Drivers, Warehousemen, and Helpers Local Union No. 523 (the Union). Dkt. # 42-3, at 4; Dkt. # 42-4. The CBA prevents Belger from firing an employee without just cause and requires Belger to give an employee at least one verbal warning, one written warning, and one suspension before terminating an employee. Dkt. # 42-4, at 12. The Union, on behalf of an employee, may file a grievance concerning any disciplinary action or the termination of employment. Id. Belger refers to this provision of the CBA as its progressive discipline policy. The United States Department of Transportation (DOT) requires Belger to conduct random drug testing for at least half of its workforce every year, and Belger fulfills this requirement by conducting random drug tests on a quarterly basis. Dkt. # 42-1, at 2. Belger uses a random number generator and selects the names of approximately 15 to 17 employees at the Tulsa division with class A or B commercial driver's licenses for random drug testing each quarter. Id. at 3.

Steven W. Ballandby was born on December 30, 1954, and worked for Belger at various times beginning in the 1980s and up to 2009. One of Ballandby's terms of employment with Belger

began in 2000 and ended on November 24, 2006, after Ballandby damaged a customer's equipment by colliding with an overpass. Dkt. # 42-3, at 6-7. Ballandby filed a grievance challenging his termination and the matter proceeded to arbitration. As a result of the arbitration, Ballandby was reinstated to his position on August 22, 2007. He was disciplined on his first day back on the job for a dress code violation, and a warning letter was placed in plaintiff's file. Dkt. # 42-7, at 2. Plaintiff received another warning letter on November 9, 2007, for making an obscene statement to the officer manager, Mary Ray. Id. at 3. On December 17, 2007, plaintiff was disciplined for failing to report to work on November 15, 2007. Id. at 4. It does not appear that any of these disciplinary infractions were used as a step in Belger's progressive disciplinary policy.

In November 2008, Ballandby received a verbal warning for leaving equipment on a trailer and Ballandby does not dispute that this warning was the first step under Belger's progressive discipline policy. Dkt. # 42-5, at 12; Dkt. # 42-8, at 22-23; Dkt. # 53, at 6. Ballandby also recalls that other employees were given verbal warnings for the same violation. Dkt. # 42-5, at 12. On January 26, 2009, plaintiff received a written warning for failing to perform a complete pre-trip inspection before hauling a load. Dkt. # 42-9. Plaintiff states that the violation occurred on October 18, 2008, that he was not disciplined until almost three months had passed, and that his vehicle passed a pre-trip inspection by another Belger employee. Dkt. # 53, at 7. However, this discipline was issued as a result of a citation given to Ballandby by the Oklahoma Highway Patrol, and Ballandby does not dispute that the violation actually occurred. Dkt. # 42-9, at 3. Ewton also testified during arbitration proceedings that he had a triple bypass operation in November 2008 and was away from work until late January 2009, and this caused a delay in issuing the discipline to Ballandby. Dkt. # 42-8, at 22-23. The January 26, 2009 written warning was the second step in the

progressive disciplinary procedure, and Ballandby did note file a grievance contesting this written warning. Dkt. # 42-8, at 21. On April 16, 2009, Ballandby did not report to work and he was suspended for three days. Dkt. # 42-10. Ballandby did not file a grievance with the Union and he served the three day suspension. Dkt. # 42-5, at 14. This suspension was the final step before termination in Belger's progressive discipline policy. Belger issued a written warning to Ballandby for failing to correct his log book on June 15, 2009, but Belger did not terminate his employment. Dkt. # 42-11. On June 29, 2009, Ballandby sent a letter to John Bornheimer stating that Belger did not give him adequate notice that his log books needed to be corrected. Dkt. # 42-12, at 1-2. Belger disciplined another driver, Dave Batson, for failing to correct his log books on June 15, 2009. Dkt. # 42-2, at 6.

Ballandby did not report to work on June 22, 2009 and he did not call to report his absence. Dkt. # 42-5, at 18-19. Ballandby states that he spoke to Operator Dave Pavey about the availability of work for June 22, 2009, and was told there was no work. Id. at 18. However, Pavey told Ballandby to contact Chuck Minor to determine whether he should report to work that day. Id. Ballandby felt that it was unnecessary to speak to Minor, because he claims that he had already spoken to Minor and he was told not to report to work on June 22, 2009. Id. Ballandby also had contacted the Union steward, Mitchell Boyd, the previous day and was told to report to work on June 22, 2009. Dkt. # 42-8, at 24. Ballandby states that Boyd told him to report for "show up" pay and Ballandby felt that it would be stealing to report to work. Dkt. # 53, at 8. Ewton investigated the matter and terminated Ballandby's employment effective June 30, 2009. Dkt. # 42-13. Ballandby filed a grievance contesting his termination, and an arbitrator found that Belger had just cause to terminate Ballandby's employment. Dkt. # 42-5, at 19.

Ballandby filed a charge of discrimination on November 13, 2009, alleging that Belger terminated Ballandby's employment based on his age and in retaliation for engaging protected activity. Dkt. # 42-14. Ballandy claims that Belger disciplined him more harshly than younger employees, subjected him to a disproportionate number of random drug tests, and that other employees made remarks about his age. Ballandby states that non-supervisory employees of Belger, Bobby Welch and Randall Tugman, called him "old man" about once or twice a month. Dkt. # 42-5, at 4. He also states that Ewton told him that he was "too old to do the job." Id. Ballandby acknowledges that he called another co-worker, Bobby Wallen, "dad" on a regular basis and Ballandby used this nickname due to Wallen's age. Id. Belger's president, Dick Belger, allegedly stated that he wanted Ballandby "gone," but the statement was made shortly after Ballandby was reinstated in 2007 and Ballandby does not dispute that Belger wanted Ballandby "gone" for filing a grievance as to his 2006 termination. Ballandby did not file any complaints concerning alleged age discrimination while he was employed by Belger and he concedes there is no direct evidence that his employment was terminated due to age.[3] Dkt. # 53, at 9. He also does not identify any protected activity, such as reporting alleged discrimination, that he engaged in during his employment with Belger.

Ballandby claims that he was treated less favorably than younger employees after he was reinstated in 2007. Ballandby was assigned to truck number 311, a Freightliner model, before his

---

[3]     Plaintiff complained about his position on the seniority list, but there is no evidence that plaintiff actually informed Belger that he believed that he was being discriminated against on the basis of his age. Dkt. # 42-5, at 31 (plaintiff notes that he complained about his position on the seniority list and "harassment" but no complaints of age discrimination were actually made to Belger); id. at 32-33 (plaintiff sent a letter to Debbie Benge about harassment and unfair treatment but he did not reference his age as a factor for the harassment).

termination in 2006 and he was assigned to truck number 240, a Ford, after his reinstatement. Dkt. # 42-5, at 3-4; Dkt. # 53-1, at 2. The Freightliner was a four axle truck capable of hauling heavier loads, and Ballandby claims that he was Belger's heavy load specialist before his termination in 2006. Dkt. # 53-1, at 2. Ballandby acknowledges that Belger had another heavy load specialist, Mark Roberts, when he was reinstated in 2007 and Roberts was older and more senior in terms of experience than Ballandby. Id. Belger subsequently purchased new trucks and assigned Ballandby to a new three axle Freightliner truck. Dkt. # 42-5, at 6. Belger maintains a seniority list for its Union employees and Ballandby's name was listed below Chris Caudill's name following Ballandby's reinstatement in 2007. Ballandby filed a grievance concerning his position on the seniority list and his name was moved ahead of Caudill's name on the seniority list no later than June 2008. Dkt. # 42-15, at 2 (June 2008 seniority list showing that Ballandby was listed ahead of Caudill). Ballandby states that he was subjected to more drug tests than all other drivers, regardless of the driver's age. Dkt. # 42-5, at 24. Plaintiff has no evidence of the number of drug tests given to other employees, but he claims that Ewton told him that he was being singled out for additional drug testing. Dkt. # 53-1, at 16.

Ballandby suffered an on-the-job injury on January 22, 2009, and reported the injury to Belger the same day. Dkt. # 42-17. Ballandby "felt a pop" in his lower back while lifting tarps and stated that he did not know how badly he was hurt. Id. Ballandby testified in his deposition that he spoke to Ewton on January 23, 2009, and Ewton refused to allow him to go to a doctor. Dkt. # 53-1, at 20. Ballandby did not contact any other supervisors and he did not visit a doctor for treatment of his lower back until February 12, 2010. Id. at 21. Ballandby filed a worker's compensation claim on February 8, 2010. Dkt. # 42-18. Ballandby claims that he did not visit a doctor because he did

not have medical insurance after the injury occurred. Dkt. # 53-1, at 28. However, he admits that he had medical insurance from at least January 22 to June 30, 2009. Id.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review,

the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

## III.

Defendant seeks summary judgment on each of plaintiff's claims. Plaintiff responds that his age discrimination and worker's compensation retaliation claims should proceed to trial, but he offers no argument as to the viability of his Title VII retaliation or intentional infliction of emotional distress claims.

### A.

Defendant argues that summary judgment is appropriate on plaintiff's federal and state law claims of age discrimination, because there is no evidence that plaintiff's age was any factor in defendant's decision to terminate plaintiff's employment. Plaintiff responds that he can establish a prima facie case of age discrimination and that defendant's stated reason for terminating his employment is pretextual.[4]

Plaintiff has produced no direct evidence of age discrimination and, when reviewing an age discrimination claim based on circumstantial evidence, the Court must apply the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, the plaintiff bears the initial burden to establish a prima facie case of discrimination.

---

[4]     Defendant argues that some of the adverse employment actions alleged by plaintiff occurred more than 300 days before plaintiff filed an EEOC charge and should not be considered by the Court. However, plaintiff's response is clear that the only adverse employment action at issue is his termination, and there is no dispute that he filed a timely EEOC charge as to his termination. Neither plaintiff's deposition testimony nor his response suggests that he is attempting to convert each disciplinary action against him into a separate basis for an age discrimination claim, and defendant's argument that the Court lacks jurisdiction over certain aspects of plaintiff's age discrimination claims is moot.

Sanders v. Southwestern Bell Telephone, L.P., 544 F.3d 1101, 1105 (10th Cir. 2008). To establish a prima facie case, a plaintiff must show: (1) that he is within the protected age group; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) he was treated less favorably than others not in the protected class. Jones v. Oklahoma City Public Schools, 617 F.3d 1273, 1279 (10th Cir. 2010). If the plaintiff meets his burden, the employer must "come forward with some legitimate, non-discriminatory reason for the adverse employment action." Hinds v. Sprint/United Management Co., 523 F.3d 1187, 1195 (10th Cir. 2008). If the employer produces a legitimate, non-discriminatory reason for its decision, the burden shifts to the plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." Rivera v. City & County of Denver, 365 F.3d 912, 920 (10th Cir. 2004). The mixed-motive analysis established in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), does not apply to claims under the ADEA, and a plaintiff asserting an age discrimination claim under the ADEA retains the "burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." Gross v. FBL Financial Servs., Inc., 129 S.Ct. 2343, 2351 (2009). The Tenth Circuit has found that Gross was consistent with existing Tenth Circuit precedent, and a plaintiff asserting an ADEA claim has the burden to prove that "age was the factor that made a difference," even if age was not the sole motivating factor for an employer's decision. Jones, 617 F.3d at 1277.

Defendant argues that plaintiff cannot establish a prima facie case of age discrimination, because there is no evidence that plaintiff was treated less favorably than younger workers. Dkt. # 42, at 15-16. Defendant is correct that plaintiff overstates the differences in treatment between himself and younger workers, and some of the events relied upon by plaintiff are not evidence of

age discrimination. In his response, plaintiff claims that he was subject to more drug tests than younger workers, but he actually testified in his deposition that he was tested more often than all other Belger employees. Dkt. # 42-5, at 24. This implies that a factor other than plaintiff's age was the cause of his perceived unfavorable treatment. Plaintiff argues that he was unfairly given a written warning for a dress code violation immediately upon his reinstatement following arbitration. Dkt. # 53, at 7. However, the timing of the discipline suggests that animus towards plaintiff's Union activities, rather than his age, was a contributing cause to the written warning. Defendant has also produced evidence that it disciplined a younger employee, Caudill, for coming to work with a beard and that Caudill received a harsher punishment than plaintiff for his violation. Dkt. # 42-2, at 3. Plaintiff states that younger employees called him "old man" once or twice a month, but he admits that he called a co-worker "dad" due to the co-worker's age. Dkt. # 42-5, at 4. This suggests that such comments were tolerated in the workplace and that plaintiff did not perceive such comments to be discriminatory or improper. Plaintiff argues that he received an older and less desirable truck upon his reinstatement in 2007, and that this is evidence of age discrimination. Dkt. # 53, at 16. The timing of this action would, at most, support an inference of retaliation against plaintiff for obtaining reinstatement, and there is no evidence tying this to plaintiff's claims of age discrimination. He has not produced evidence that Belger had other trucks available when he was reinstated and defendant has shown that plaintiff was assigned a newer truck when defendant purchased new trucks in 2008. Dkt. # 42-5, at 6. Plaintiff's assignment to a truck that he felt was less desirable is not evidence of age discrimination. Plaintiff claims that Belger's president wanted him "gone," but acknowledges

this statement was in reference to plaintiff's Union activity, rather than his age.[5] Dkt. # 42-5, at 22-23. Because plaintiff has not shown that the above actions have any relation to his age, the Court will not consider that evidence as relevant to plaintiff's prima facie case or as evidence of pretext.

One of plaintiff's primary complaints concerns the validity of the final disciplinary action resulting in his termination, because he claims that he had legitimate reasons for failing to report to work on June 22, 2009. Plaintiff claims that was told by a dispatcher that there would be no work for him on June 22, 2009, and he did not want to report to work for "show up" pay. Dkt. # 53, at 18. However, plaintiff was aware that the company policy required him to report to work unless expressly told by a dispatcher not to attend work, and the Union steward, Boyd, told plaintiff on June 21, 2009 that he should report to work regardless of the availability of work. Dkt. # 42-8, at 23-24. Plaintiff filed a Union grievance concerning his failure to report to work on June 22, 2009 and he admits that an arbitrator resolved this issue in favor of defendant. The Court will not revisit the arbitrator's finding and plaintiff may not dispute that defendant had legitimate reasons for considering plaintiff's failure to report to work as a legitimate basis to terminate his employment. Dkt. # 42-5, at 19.

Even though much of plaintiff's evidence is not relevant to his claims of age discrimination, the Court will assume that plaintiff has produced enough evidence to meet his minimal burden of production to make a prima facie case of age discrimination. See Mathews v. Denver Newpaper Agency LLP, ___ F.3d ___, 2011 1901341, * 10 (10th Cir. May 17, 2011) (a plaintiff may meet his

---

[5]     Plaintiff states that Dick Belger's statement provides the framework for his age discrimination claim and is key evidence in support of his claims. Dkt. # 53, at 18. Quite to the contrary, this statement has no relevance to plaintiff's claims of age discrimination and will be given no further consideration.

burden to establish a prima facie case with a "minimal" showing). There is no dispute that plaintiff is a member of a protected class due to his age and that he suffered an adverse employment action. Defendant also does not dispute that plaintiff was qualified for his job, and defendant's basis for challenging plaintiff's prima facie case is that plaintiff has no evidence that younger employees were treated more favorably than plaintiff. Plaintiff was repeatedly disciplined and there is enough evidence to suggest that younger employees were not disciplined as frequently. Plaintiff claims that he was improperly disciplined for turning in his log books with corrections in June 2009 and was disciplined in January 2009 for an incident that occurred in October 2008. He also testified in his deposition that Ewton made at least two statements referencing plaintiff's age. Even if this evidence is not substantial, it may be sufficient to satisfy plaintiff's burden of production at the prima facie case stage of the analysis.

Defendant states that it terminated plaintiff's employment in compliance with its progressive disciplinary policy, and that this is a legitimate, non-discriminatory reason for terminating plaintiff's employment. "The defendant's burden is merely to articulate through some proof a facially nondiscriminatory reason for the termination; the defendant does not at this stage of the proceeding need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need prove that the reasoning was applied in a nondiscriminatory fashion." EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1316 (10th Cir. 1992). The Tenth Circuit has described the defendant's burden at this stage of the proceedings as "exceedingly light." Zamora v. Elite Logistics, Inc., 478 F.3d 1160, 1165 (10th Cir. 2007). Although plaintiff disputes that defendant has articulated a legitimate, non-discriminatory reason for terminating his employment, plaintiff's arguments are more appropriately considered at the pretext stage, and it is clear that defendant has

met its burden to come forward with a legitimate, non-discriminatory reason for the challenged employment decision.

Plaintiff argues that defendant's legitimate, non-discriminatory reason for terminating his employment is pretextual for unlawful discrimination. At this stage of the proceeding, the burden shifts to plaintiff to show that defendants' explanation for terminating plaintiff's employment is pretextual. Plotke v. White, 405 F.3d 1092,1099 (10th Cir. 2005); Salguero v. City of Clovis, 366 F.3d 1168, 1176 (10th Cir. 2004). "A plaintiff demonstrates pretext by showing . . . that the employer's proffered explanation is unworthy of credence." Stinnett v. Safeway, Inc., 337 F.3d 1213, 1218 (10th Cir. 2003) (quoting Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir. 1994)). A plaintiff typically attempts to satisfy his burden by "revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" Mackenzie v. City & County of Denver, 414 F.3d 1266, 1278 (10th Cir. 2005) (quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)). A plaintiff's "mere conjecture" that the employer's explanation is pretext is not a sufficient basis to deny a motion for summary judgment. Branson v. Price River Coal Co., 853 F.2d 786, 772 (10th Cir. 1988). In the context of an age discrimination claim, the burden of persuasion remains with plaintiff at all times to show that age was the but-for cause of plaintiff's termination. Smith v. City of Allentown, 589 F.3d 684, 691 (10th Cir. 2009).

Much of plaintiff's evidence of pretext has already been rejected as irrelevant to his age discrimination claims, and there is very little evidence that remains for consideration at this stage. The Court will consider plaintiff's January 26 and June 15, 2009 written warnings and Ewton's

alleged statements concerning plaintiff's age as evidence of pretext. Plaintiff was disciplined on January 26, 2009 for a safety violation that occurred on October 18, 2008, and he claims that the delay in issuing the discipline is evidence of age discrimination. The record is clear that the Oklahoma Highway Patrol issued a citation to plaintiff and the citation formed the basis for the written warning, and there is no dispute that plaintiff actually committed the safety violation referenced in the January 26, 2009 written warning. Dkt. # 42-9, at 2-3. Plaintiff's supervisor, Ewton, also had triple bypass surgery in November 2008 and was away from work until late January 2009, and this delayed the placement of a written warning in plaintiff's employment file. Dkt. # 42-8, at 22-23. Plaintiff was disciplined on June 15, 2009 for failing to correct his log books and return them to Belger, and he claims that he was not given a deadline or specific instructions to complete the corrections. Dkt. # 53, at 17. Although plaintiff disagrees with this discipline, a younger employee, Dave Batson, was disciplined for the same issue on June 15, 2009, and plaintiff has not shown that he was disparately disciplined because of his age. Dkt. # 42-2, at 6. The Court finds that neither the January 26 nor June 15, 2009 written warnings suggest that defendant's legitimate, non-discriminatory reason for terminating his employment is unworthy of belief.

Plaintiff cites two comments made by Ewton and claims that the comments are circumstantial evidence that Ewton was biased against older employees. Plaintiff testified in his deposition that, sometime before he was reinstated in 2007, Ewton told plaintiff that he was "getting too old to do the job." Dkt. # 53-1, at 3. This statement was made in the context of Ewton's admission that he felt too old to perform similar work. Dkt. # 42-5, at 5. Plaintiff also testified that Ewton made another such statement before plaintiff's reinstatement, and plaintiff admits that the statement was intended to be complimentary to plaintiff. Id. Defendant notes that Ewton is two

years older than plaintiff and Ewton is unlikely to have any bias against older workers. Defendant also argues that the statements were remote in time to plaintiff's termination and Ewton was not plaintiff's supervisor when he made the statements. Id. at 8 (plaintiff states in his deposition that Ewton was not his supervisor when he made the alleged comments about plaintiff's age). Plaintiff has taken two comments by Ewton out of context and he has not shown that the comments lend any support to his age discrimination claims. When the full context of the statements is considered, it is reasonable to infer that Ewton was attempting to compliment plaintiff and that plaintiff understood this when the statements were made. Thus, Ewton's comments generally referencing plaintiff's age do not cast doubt on the validity of defendant's reason for firing plaintiff.

The Court finds that summary judgment should be entered in favor of defendant on plaintiff's ADEA claim. Plaintiff has produced no relevant evidence tending to show that he was treated differently because of his age and, although he personally disagreed with some of the workplace discipline he received, he has not shown that the discipline was unwarranted or was merely a pretext to terminate his employment. Even if the Court were to consider the full body of evidence at this stage, it is clear that plaintiff's difficulties increased after he was reinstated following arbitration and this implies that Union animus, rather than age discrimination, could have been a contributing cause to any retaliation suffered by plaintiff.

For the reasons stated above, defendant is also entitled to summary judgment on plaintiff's age discrimination Burk tort. The Tenth Circuit has stated that Oklahoma courts have not adopted a "but-for" causation test for Burk torts based on age discrimination. Medlock v. United Parcel Serv., Inc., 608 F.3d 1185, 1194 n.7 (10th Cir. 2010). Instead, to survive summary judgment on a Burk tort, plaintiff must show that age was a significant factor in his employer's decision. See

Vasek v. Board of County Comm'rs of Noble County, 186 P.3d 928, 932 (Okla. 2008).    Even though this is a more lenient standard than that under federal law, the Court has reviewed the evidence and found no evidence that age played any part in plaintiff's termination.

**B.**

Defendant asserts that it is entitled to summary judgment on plaintiff's Title VII[6] retaliation claim, because there is no evidence that plaintiff engaged in protected activity that could form the basis for a retaliation claim.  Plaintiff does not respond to defendant's motion for summary judgment on this issue.

Under the ADEA, it is unlawful for an employer to take any adverse action against an employee for filing a charge or reporting acts of alleged age discrimination.  Hinds, 523 F.3d at 1201-02.  To make a prima facie case of retaliation, plaintiff must show that: (1) he engaged in protected opposition to discrimination; (2) his employer took an adverse employment action against him; and (3) there is a causal connection between the opposition and the adverse action.  Stover v. Martinez, 382 F.3d 1064, 1071 (10th Cir. 2004).  The law is clear that reporting workplace discrimination to the EEOC is protected behavior.  Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir. 1999); McCue v. State of Kansas, Dep't of Human Resources, 165 F.3d 784, 789 (10th Cir. 1999).  However, the filing of an EEOC charge is not the only type of protected activity and an informal complaint may constitute protected activity if it adequately puts an employer on notice of an employee's allegations of unlawful discrimination.  See Petersen v. Utah Dep't of Corrections, 301 F.3d 1182, 1188 (10th Cir. 2002).  An employee may establish causation by

---

[6]    Plaintiff's primary complaints concern alleged age discrimination, not discrimination based on any class protected under Title VII, and the Court will also construe plaintiff's retaliation claim as an ADEA retaliation claim.

showing that the adverse employment action occurred soon after the protected activity. Annett v. University of Kansas, 371 F.3d 1233, 1239-40 (10th Cir. 2004); Burrus v. United Tel. Co. of Kansas, Inc., 683 F.2d 339, 343 (10th Cir. 1982). "Unless there is a very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1252 (10th Cir. 2001). If the plaintiff can establish a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Pinkerton v. Colorado Dep't of Transp., 563 F.3d 1052, 1064 (10th Cir. 2009). If the employer comes forward with a legitimate, non-discriminatory reason for its actions, the burden shifts to the employee to show that employer's stated reason is pretextual. Id.

Plaintiff has produced no evidence suggesting that he made any complaints about an unlawful employment practice under the ADEA or Title VII. Plaintiff made general complaints about discipline he believed was unwarranted, his position on the seniority list, and the quality of his truck, but the basis for these complaints was that plaintiff believed he was being treated differently due to his union activities. Dkt. # 42-5, at 27 (plaintiff disputed his position on the seniority list with Bornheimer and raised concerns about safety and equipment); Id. at 30-31 (plaintiff complained to Ewton about his position on the seniority list based on plaintiff's experience, not his age). The Tenth Circuit has stated that

> Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII]. General complaints about company management . . . will not suffice.

Hinds v. Spring/United Management Co., 523 F.3d 1187, 1203 (10th Cir. 2008); see also Petersen, 301 F.3d at 1188 (the employee's complaints must give adequate notice to the employer that the

employee is complaining of conduct prohibited by Title VII). Retaliation against union members may be prohibited by other federal laws, but neither the ADEA nor Title VII provide a claim for alleged retaliation or discrimination based solely on a person's union activities. Even if plaintiff subjectively believed that his age was factor in any alleged disparate treatment, there is no evidence that he conveyed this concern to his employer. Without evidence that he engaged in protected activity, plaintiff cannot establish a <u>prima facie</u> case of retaliation under the ADEA or Title VII and defendant's motion for summary judgment should be granted on this claim.

## C.

Defendant argues that plaintiff has not established a <u>prima facie</u> case of workers' compensation retaliation, because there is no evidence that exercised or threatened to exercise his rights under the worker's compensation act before his termination or that plaintiff was consequently terminated after suffering an on-the-job injury. Plaintiff responds that defendant was on notice of his intent to file a worker's compensation claim and defendant retaliated against by him by subjecting him to unwarranted disciplinary actions. Dkt. # 53, at 20-21.

Under OKLA. STAT. tit. 85, § 5, no employer may discharge an employee for filing in good faith a claim for workers' compensation. To establish a <u>prima facie</u> case for retaliatory discharge under § 5, a discharged employee must show "employment, on the job injury, receipt of treatment under circumstances which put the employer on notice that treatment had been rendered for a work-related injury, or that the employee in good faith instituted, or caused to be instituted, proceedings under the Act, and *consequent* termination of employment." <u>Estrada v. Port City Properties, Inc.</u>, 158 P.3d 495, 499 (Okla. Civ. App. 2007) (emphasis in original) (quoting <u>Buckner v. Gen'l Motors Corp.</u>, 760 P.2d 803, 806 (Okla. 1988)). To show "consequent termination" a plaintiff must produce

evidence that gives rise to "a legal inference [that] the discharge was significantly motivated by retaliation for exercising one's statutory rights." <u>Wallace v. Halliburton Co.</u>, 850 P.2d 1056, 1058 (Okla. 1993); <u>see</u> <u>also</u> <u>Taylor v. Cache Creek Nursing Ctrs.</u>, 891 P.2d 607, 610 (Okla. Civ. App. 1994).   A plaintiff need not meet a "but for" standard of causation for a successful § 5 claim; however, he must "present evidence that does more than show the exercise of [his] statutory rights was only one of many possible factors resulting in [his] discharge." <u>Blackwell v. Shelter Mut. Ins. Co.</u>, 109 F.3d 1550, 1554 (10th Cir. 1997).  Where an employee's allegations are sufficient to bring him within the section's protection, the employer is called upon to present an alternate reason for the employee's termination.  <u>Buckner</u>, 760 P.2d at 807.   If the employer meets its burden to articulate a legitimate non-retaliatory reason for terminating the employee, the employee bears the burden to show that the employer's reason was pretextual.  <u>Id.</u>  The Oklahoma Supreme Court has explained that this burden must be considered along with the employee's ultimate burden of persuasion to show retaliatory discharge:

> The ultimate burden of persuading the trier of fact that the employer retaliatorily discharged the employee for exercising statutory rights under the Act remains at all times with the employee. The burden of persuasion never shifts and the employee bears the burden of persuasion that the reason given for termination was pretextual. This burden merges with the ultimate burden of persuading the court that [he] has been the victim of retaliatory discharge. The employee may succeed in this, either directly by persuading the court that the discharge was significantly motivated by retaliation for [his] exercise of statutory rights, or indirectly by showing that the employer's proffered explanation is unworthy of credence.

<u>Id.</u>

On January 22, 2009, plaintiff felt a "pop" in his lower back while moving tarps and he completed an accident report form on the same day. Dkt. # 42-17. He did not request to see a doctor and did not make any statements suggesting that he would file a worker's compensation claim. Plaintiff testified that he received the accident report form from Ewton and Ewton was aware of plaintiff's injury. Dkt. # 53-1, at 19-20. On January 23, 2009, plaintiff asked Ewton if he could leave work to go to a doctor, and Ewton denied plaintiff's request to leave work. Id. at 20. Plaintiff made no attempt to obtain medical treatment for his injury until February 2010. Plaintiff claims that he did not have medical insurance and could not pay for medical treatment, but he admitted during his deposition that he was insured from the day of his injury, January 22, 2009, until the termination of his employment with Belger, June 30, 2009. Id. at 28. Plaintiff filed a workers' compensation claim on February 8, 2010, and there is no evidence that plaintiff even mentioned his lower back injury to anyone at Belger after January 23, 2009.

Defendant does not contest that plaintiff can establish the first and second elements of a prima facie case of worker's compensation retaliation, but argues that plaintiff has failed to establish the third and fourth elements. Defendant argues that plaintiff did not file a workers' compensation claim or seek medical treatment until almost a year after his injury, and there is no evidence suggesting that plaintiff intended to file a workers' compensation claim while he was employed by defendant. Dkt. # 42, at 24. Plaintiff claims that there is sufficient evidence to show that "Belger had reason to believe Plaintiff had intent to file a claim." Dkt. # 53, at 21. Even assuming that plaintiff's statement is true, this would not assist plaintiff in establishing a prima facie case of worker's compensation retaliation. Plaintiff must be able to establish that he received medical treatment under circumstances which put defendant on notice that treatment had been rendered for

a work-related injury, or that he in good faith instituted or caused to be instituted a worker's compensation claim. Estrada, 158 P.3d at 499. However, the Court must construe the evidence in favor of plaintiff and he testified in his deposition that Ewton discouraged him from seeking medical treatment on January 23, 2009. There is no dispute that plaintiff filed an injury report form on January 22, 2009 and this put defendant on notice of plaintiff's injury. Even though plaintiff made no further attempts to seek medical treatment for his injury, the Court will assume that plaintiff can establish the third element of a prima facie case of workers' compensation retaliation.

Plaintiff claims that defendant unfairly disciplined him after receiving notice of his injury on January 22, 2009, and this is sufficient to show that he was eventually terminated on June 30, 2009 in retaliation for suffering an on-the-job injury. However, the Court has already determined that plaintiff may not rely on allegedly unfair discipline on June 22, 2009 as a basis to establish age discrimination, and the same reasoning applies to plaintiff's worker's compensation retaliation claim.[7] Plaintiff filed a grievance concerning this discipline and he agrees that the arbitrator determined he should have reported to work on June 22, 2009. Dkt. # 42-5, at 19. Plaintiff complains that he received a written warning on January 26, 2009, almost three months after receiving a traffic citation, and this shows that defendant was retaliating against him in the event he filed a worker's compensation claim. There is no dispute that plaintiff received a traffic citation on October 18, 2008 and, in any event, plaintiff's employment was not terminated due to this written warning. The Court also notes that evidence of disciplinary infractions, even if motivated by an improper purpose, lend little or no support to plaintiff's worker's compensation retaliation claim.

_____

[7]     Plaintiff relies, in part, on an alleged disciplinary action on November 9, 2009. However, his employment was terminated on June 30, 2009 and it appears that he is referring to a written warning issued on November 9, 2007. Dkt. # 42-7, at 3.

Plaintiff was repeatedly disciplined before and after January 22, 2009, and there is nothing inconsistent with defendant's treatment of plaintiff after his on-the-job injury in comparison to his employment record before the injury occurred.  Thus, evidence of allegedly unfair discipline does not tend to show that defendant was retaliating against plaintiff due to the possibility that he would file a worker's compensation claim.  Defendant has produced evidence that at least six employees at its Tulsa division filed one or more worker's compensation claims after May 1, 2006, and these employees voluntarily retired or are still employed by defendant.  Dkt. # 42-1, at 3.

The Court finds that plaintiff has not shown that he was consequently terminated due to the possibility he might file a workers' compensation claim.  There is no evidence that plaintiff was treated differently after his injury or that defendant's legitimate reason for terminating his employment is unworthy of belief.  Plaintiff was terminated over five months after his on-the-job injury and there is no temporal proximity between plaintiff's injury and his termination.  Plaintiff has not produced evidence raising an inference that defendant's actions were motivated by a desire to retaliate against plaintiff for the exercise or threatened exercise of his workers' compensation rights, and summary judgment should be granted in favor of defendant on plaintiff's workers' compensation retaliation claim.

**D.**

Defendant argues that plaintiff cannot show that defendant's conduct was extreme and outrageous or that plaintiff suffered severe emotional distress, and defendant should be granted summary judgment on plaintiff's claim of intentional infliction of emotional distress.  Dkt. # 42, at 29-30.  Plaintiff's response to defendant's motion for summary judgment failed to offer any argument in support of his intentional infliction of emotional distress claim.

Oklahoma courts have recognized a cause of action for intentional infliction of emotional distress, also known as the tort of outrage. See Gaylord Entertainment Co. v. Thompson, 958 P.2d 128, 149 (Okla. 1998). The action is governed by the narrow standards laid out in the Restatement Second of Torts, § 46. Id. In Breeden v. League Services Corp., 575 P.2d 1374 (Okla. 1978), the Oklahoma Supreme Court explained:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

Id. at 1376. To state a claim, a plaintiff must allege that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." Schovanec v. Archdiocese of Oklahoma City, 188 P.3d 158, 175 (Okla. 2008) (quoting Computer Publications, Inc. v. Welton, 49 P.3d 732, 735 (Okla. 2002)). Under Oklahoma law, the trial court must assume a "gatekeeper role" and make an initial determination that the defendant's conduct "may be reasonably regarded as sufficiently extreme and outrageous to meet the Restatement § 46 standards." Trentadue v. United States, 397 F.3d 840, 856 n.7 (10th Cir. 2005) (applying Oklahoma law). If reasonable persons could reach differing conclusions in the assessment of the disputed facts, the Court should submit the claim to the jury to determine whether the defendant's conduct could result in liability. Id. The Court is to make a similar threshold determination with regard to the fourth prong, the presence of severe emotional distress. Id.

In cases arising out of the workplace, Oklahoma appellate courts have found that a defendant engaged in extreme and outrageous conduct only when that defendant intentionally and persistently engaged in a course of conduct that harmed the plaintiff. See Computer Publications, 49 P.3d at 736 (claim should have been submitted to a jury when plaintiff presented evidence that harassment lasted more than two years and caused plaintiff to quit her job, move, and repeatedly change phone numbers); Miner v. Mid-America Door Co., 68 P.3d 212 (Okla. Civ. App. 2002) (employer's alleged failure to reassign the plaintiff after learning of workplace harassment, even if unreasonable, was not extreme and outrageous); Gabler v. Holder & Smith, Inc., 11 P.3d 1269 (Okla. Civ. App. 2000) (noting that workplace harassment rarely rises to the level of extreme and outrageous conduct); Mirzaie v. Smith Cogeneration, Inc., 962 P.2d 678 (Okla. Civ. App. 1998) (employer's conduct was not extreme and outrageous when, inter alia, the plaintiff's manager made derogatory sexual remarks about the plaintiff, woke plaintiff up in the middle of the night to do unnecessary work, and terminated him two hours before his wedding); Zahorsky v. Community Nat'l Bank of Alva, 883 P.2d 198 (Okla. Civ. App. 1994) (employer not liable for intentional infliction of emotional distress when an employee forced the plaintiff to have sex with him and employer failed to fire the employee, even though the employer allegedly knew about the conduct).

Plaintiff has not shown that defendant engaged in extreme and outrageous conduct or that he suffered severe emotional distress. Construing the evidence in plaintiff's favor, some co-workers referred to him as an "old man" and plaintiff expressed dissatisfaction with some working conditions upon his reinstatement in 2007. In particular, plaintiff disagreed with his position on the seniority list and was assigned to an older model truck. Co-workers referred to plaintiff as "old man," but he similarly referred to another co-worker as "dad." See Anderson v. Oklahoma Temporary Servs. Inc.,

925 P.2d 574 (Okla. Civ. App. 1996) ("it is reasonable for the trial court to consider the overall atmosphere of the work-place setting as well as the plaintiff's own conduct in making its initial assessment of a defendant's conduct"). This suggests that such comments were tolerated in the workplace. Plaintiff claims that he was subjected to unfair discipline in retaliation for obtaining reinstatement of his employment. However, an arbitrator has determined that defendant had just cause to terminate plaintiff's employment and plaintiff's complaints about unfair discipline do not show that defendant's conduct was extreme and outrageous. Considering all of the evidence, it is clear that defendant did not engage in extreme and outrageous conduct and defendant is entitled to summary judgment on plaintiff's claim of intentional infliction of emotional distress.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment and Brief in Support (Dkt. # 42) is **granted**. A separate judgment is entered herewith.

**DATED** this 22nd day of July, 2011.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT